No. 21-2644

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

Jose Ageo LUNA VANEGAS,

*Plaintiff - Appellant*,

v.

SIGNET BUILDERS, INC.,

*Defendant - Appellee*.

Appeal from the United States District Court
for the Western District of Wisconsin

BRIEF OF AMICUS CURIAE IOWA STATE BUILDING AND
CONSTRUCTION TRADES COUNCIL IN SUPPORT OF PLAINTIFF-
APPELLANT

Michael E. Amash
Cayla M. Rodney
BLAKE & UHLIG, P.A.
475 New Brotherhood Building
753 State Avenue
Kansas City, Kansas 66101
Telephone:  (913) 321-8884
Facsimile:  (913) 321-2396

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2644

Short Caption: Jose Ageo Luna Vanegas v. Signet Builders, Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Iowa State Building and Construction Trades Council

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Blake & Uhlig, P.A. for Amicus Curiae

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Michael E. Amash    Date: December 7, 2021

Attorney's Printed Name: Michael E. Amash

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** [✓] **No** [ ]

Address: 475 New Brotherhood Building, 753 State Avenue, Kansas City, Kansas 66101

Phone Number: (913) 321-8884    Fax Number: (913) 321-2396

E-Mail Address: mea@blake-uhlig.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2644

Short Caption: Jose Ageo Luna Vanegas v. Signet Builders, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Iowa State Building and Construction Trades Council

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Blake & Uhlig, P.A. for Amicus Curiae

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

None

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Cayla M. Rodney     Date: December 7, 2021

Attorney's Printed Name: Cayla M. Rodney

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☑

Address: 475 New Brotherhood Building, 753 State Avenue, Kansas City, Kansas 66101

Phone Number: (913) 321-8884      Fax Number: (913) 321-2396

E-Mail Address: cmr@blake-uhlig.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................................i

TABLE OF AUTHORITIES ................................................................ ii

IDENTITY AND INTEREST OF AMICUS CURIAE ........................................1

AUTHORSHIP STATEMENT ...............................................................2

ARGUMENT ...................................................................................3

I.    **The determination that Luna Vanegas and similarly situated H-2A workers were engaged in agricultural work, thereby making the agricultural exemption applicable, is detrimental to Iowa workers and their local unions**. ........................................................................3

    A. On average, the State of Iowa hosts the highest number of H-2A construction-related jobs, compared to any other state in the nation. ...........4

    B. The misclassification of the construction work as "agricultural," negatively impacts the wages of Iowa workers and the stability of their local unions. ........................................................8

II.   **Conclusion** ...............................................................................12

**CERTIFICATE OF COMPLIANCE** .................................................14

**CERTIFICATE OF SERVICE** ........................................................15

## TABLE OF AUTHORITIES

**Statutes**

8 U.S.C. § 1188(a)(1) ............................................................................10

**Other Authorities**

*About Us,*
NORTH AMERICA'S BUILDING TRADES UNIONS,
https://nabtu.org/about-nabtu/ (last visited Dec. 6, 2021) .....................................9

*Animal Feeding Operations General Overview*,
IOWA DEPARTMENT OF NATURAL RESOURCES,
https://www.iowadnr.gov/Portals/idnr/uploads/afo/afo-files/afo-general-
overview.pdf (last visited Dec. 1, 2021). ............................................................6

*Basic AFO Data,*
IOWA DEPARTMENT OF NATURAL RESOURCES,
https://programs.iowadnr.gov/animalfeedingoperations/ (follow Iowa DNR
hyperlink; click "Reports," select "Basic AFO Data" from drop-down menu, and
click "Print/Export") (last visited Dec. 3, 2021) ....................................................7

*H-2A: Temporary Agricultural Employment of Foreign Workers*,
U.S. DEPARTMENT OF LABOR,
https://www.dol.gov/agencies/whd/agriculture/h2a
(last accessed Dec. 3, 2021). ................................................................4

James Merchant & David Osterberg,
*The Explosion of CAFOs in Iowa and Its Impact on Water Quality and Public
Health*, THE IOWA POLICY PROJECT (Jan. 2018)
https://www.iowapolicyproject.org/2018docs/180125-CAFO.pdf. .......................7

*Performance Data*,
U.S. DEPARTMENT OF LABOR,
https://www.dol.gov/agencies/eta/foreign-labor/performance ...................... 4, 5, 6

Stephen Franklin, et al.,
*This Visa Loophole That Big Ag Construction Firms Love to Exploit*,
IN THESE TIMES (Apr. 30, 2018)
https://inthesetimes.com/article/farming-visas-immigration-
jobs-h2b-trump ............................................................................................ 7, 11

## IDENTITY AND INTEREST OF AMICUS CURIAE

The Iowa State Building and Construction Trades Council ("Iowa State B.C.T.C.") is a labor association of construction trade unions across the state of Iowa.

Given the Iowa State B.C.T.C.'s extensive involvement in the labor community on the state, national, and international level, the Iowa State B.C.T.C. can provide a unique perspective on developing labor issues, such as the one presented in *Luna Vanegas*. Moreover, the Iowa State B.C.T.C. has a deep understanding of the impact that proper distribution of wages can have on the working class, and the detrimental effects an employer's failure to do so can have on their workers and the local workers competing within the economy.

As such, the following brief identifies relevant factual information regarding the commercial context that this case arises from, to ensure a complete and plenary presentation of this important issue.

The Iowa State B.C.T.C. has authority to file this amicus brief, based on the consent of all parties.

## AUTHORSHIP STATEMENT

Counsel for the Iowa State B.C.T.C. authored this brief in its entirety. No party's counsel authored this brief in whole or in part, and no party or other person contributed money intended to fund the preparation and submission of this brief.

## ARGUMENT

I. **The determination that Luna Vanegas and similarly situated H-2A workers were engaged in agricultural work, thereby making the agricultural exemption applicable, is detrimental to Iowa workers and their local unions.**

The decision by the United States District Court of the Western District of Wisconsin to deny Plaintiff Jose Ageo Luna Vanegas overtime by applying the agricultural exemption, was not only legally improper, but economically devastating for similarly situated H-2A workers and Iowa workers alike.

While political discourse may suggest that the interests of foreign workers coming into the United Stated are at odds with U.S. workers, the situation here demonstrates that the rights of workers–no matter their nationality–must be protected for the rights of all workers to prosper. As such, the Iowa State B.C.T.C., in support of Plaintiff-Appellant, seeks to illustrate for the Seventh Circuit, the broader commercial context in which the issue of this case comes to the Court.

Significantly, in recent years Iowa has experienced an extreme influx of H-2A construction-related jobs being awarded to contractors for projects within the state. This influx of H-2A workers, coupled with the continued avoidance of overtime payments to these workers through the improper application of the agricultural exemption, results in depressed wages for Iowa construction laborers and threatens the stability of their unions across Iowa.

3

**A. On average, the State of Iowa hosts the highest number of H-2A construction-related jobs, compared to any other state in the nation.**

The U.S. Department of Labor ("USDOL") is responsible for certifying the H-2A jobs requested by an employer. *See H-2A: Temporary Agricultural Employment of Foreign Workers*, U.S. DEPARTMENT OF LABOR, https://www.dol.gov/agencies/whd/agriculture/h2a (last visited Dec. 3, 2021). As such, the USDOL publishes data tracking the number of H-2A jobs it certifies across the country each year. *See Performance Data*, U.S. DEPARTMENT OF LABOR, https://www.dol.gov/agencies/eta/foreign-labor/performance (last visited Dec. 6, 2021). Utilizing this data set, Legal Action of Wisconsin provided the Iowa State B.C.T.C. with an analysis focused only on the number of certified H-2A jobs each year that involved construction-related work in the contracts, similar to the work that Luna Vanegas engaged in.

This data collection revealed that over the last three (3) years–2018, 2019, and 2020–the state of Iowa averaged nearly forty-percent (40%) of the country's entire contracting of H-2A workers assigned to construction-related jobs.[1] *See Performance Data*, U.S. DEPARTMENT OF LABOR, https://www.dol.gov/agencies/eta/

---

[1] Iowa's percentage of the nation's H-2A construction-related jobs granted was approximately 38% in 2018, 41% in 2019, and 41% in 2020.

foreign-labor/performance (last visited Dec. 6, 2021). More specifically, in 2018 there were two-thousand five-hundred and fifty-eight (2,558) jobs contracted in Iowa, in 2019 there were two-thousand three-hundred and eighty-four (2,384) jobs contracted in Iowa, and in 2020 there were one-thousand three-hundred and eighty-five (1,385) jobs contracted in Iowa. *Id*. A total of six-thousand three-hundred and twenty-seven (6,327) jobs were certified in Iowa over the three (3) year period. *Id*. With such a high number of certified jobs, these construction projects have not been singularly located. Instead, these jobs spread across the state of Iowa. Specifically, during 2020 to 2021, fifty-five (55) of Iowa's ninety-nine (99) counties hosted certified jobs by H-2A workers. *Id*.

The magnitude of these numbers in Iowa are best understood when compared to other states across the country, which Legal Action of Wisconsin also analyzed within the USDOL data set. For example, Nebraska averages the next highest number of certified H-2A construction-related jobs, and over the last three (3) years the state's contractors have contracted approximately three-thousand (3,000) H-2A construction-related jobs, which is less than half of those contracted in Iowa. *See Performance Data*, U.S. DEPARTMENT OF LABOR, https://www.dol.gov/agencies/eta/foreign-labor/performance (last visited Dec. 6, 2021). Further, there are approximately fifteen (15) states in the country that have contracted less than one-

hundred (100) related jobs over the same time period–grossly under the  six-thousand three-hundred and twenty-seven (6,327) jobs in Iowa. *Id*.

Finally, in the analysis provided by Legal Action of Wisconsin, the number of certified jobs per employer was examined. This revealed that Signet, the Defendant-Appellee, averages the second highest number of contracted H-2A construction-related jobs of all contractors in the United States. *See Performance Data*, U.S. DEPARTMENT OF LABOR, https://www.dol.gov/agencies/eta/foreign-labor/performance (last visited Dec. 6, 2021). In the same three (3) year time period examined above, Signet had two-thousand eight-hundred and six (2,806) jobs certified. *Id*. As established in the facts of *Luna Vanegas*, Signet classifies the construction jobs for these H-2A workers as agricultural and fails to pay them overtime or proper wages in comparison to the average wages for Iowa construction workers. (See A-14–15, ¶ 16).

The foregoing statistics on the rising number of H-2A workers being assigned to construction-related jobs in Iowa, correlates with the recent spike in the number of livestock enclosures located within the state. Specifically, the Iowa Department of Natural Resources ("Iowa DNR") utilizes geo-spatial data to identify the number of livestock enclosures within the state each year. *See Animal Feeding Operations General Overview*, IOWA DEPARTMENT OF NATURAL RESOURCES, https://www.iowadnr.gov/Portals/idnr/uploads/afo/afo-files/afo-general-

overview.pdf (last visited Dec. 1, 2021). The Iowa DNR's most recent tracking revealed that there are currently twelve-thousand seven-hundred and twenty-eight (12,728) livestock enclosures within Iowa. *Basic AFO Data,* IOWA DEPARTMENT OF NATURAL RESOURCES, https://programs.iowadnr.gov/animalfeedingoperati

ons/ (follow Iowa DNR hyperlink; click "Reports," select "Basic AFO Data" from drop-down menu, and click "Print/Export") (last visited Dec. 3, 2021). This total represents nearly five hundred (500) new or expanded livestock enclosures being built annually over the last decade in Iowa. *See* James Merchant & David Osterberg, *The Explosion of CAFOs in Iowa and Its Impact on Water Quality and Public Health*, THE IOWA POLICY PROJECT (Jan. 2018) https://www.iowapolicyproject.org/ 2018docs/180125-CAFO.pdf.

Notably, this extraordinary boom of H-2A construction-related jobs in Iowa can be attributed to the USDOL's failure in recent years to follow its own guidelines meant to exclude nonagricultural work being done under an H-2A visa. Previously, the USDOL has explicitly stated that construction projects–such as, the one Luna Vanegas worked on–were nonagricultural. For example, in 2008 the USDOL refused to permit the employer Alewelt Concrete Inc., from bringing in workers under H-2A visas because the work consisted of livestock confinement construction in Iowa. *See* Stephen Franklin, et al., *This Visa Loophole That Big Ag Construction Firms Love*

7

*to Exploit*, IN THESE TIMES (Apr. 30, 2018) https://inthesetimes.com/article/farming-visas-immigration-jobs-h2b-trump. Specifically, the USDOL stated in its letter of refusal that it could not accept Alewelt's application because, "[t]he requested workers will not be raising, feeding or caring for the livestock in the facilities." *Id*. Such a decision by the USDOL upheld the spirit of H-2A visas, which are intended to provide seasonal farmworkers for agricultural work only.

The rising number of H-2A construction-related jobs in Iowa and across the country, represents the consequence of the USDOL's failure to abide by its own guidelines. By allowing construction jobs to be classified as agricultural, employers are permitted to pay lower wages, excused from providing benefits, and avoid overtime payment requirements to its H-2A workers who are providing highly valued and skilled construction labor. With Iowa experiencing the brunt of the spike in H-2A construction-related jobs, Iowa workers and their local unions have been hardest hit by its impacts on the job market. Most significantly, as will be established in following subsection, the misuse of H-2A visas causes depressed wages and threatens union stability.

**B. The misclassification of the construction work as "agricultural," negatively impacts the wages of Iowa workers and the stability of their local unions.**

Foremost, the presentation of the above information by the Iowa State B.C.T.C. should *not* be interpreted as the association suggesting that Signet and other

contractors should be hiring U.S. workers rather than migrant workers. Instead, the Iowa State B.C.T.C. introduces this information solely to illustrate that when Signet, and similar employers, are able to misclassify and thereby greatly under pay migrant workers, the impact is felt locally.

As an ally to nearly one-hundred and fifty (150) unions consisting of thousands of workers and hundreds of partner contractors, the Iowa State B.C.T.C. seeks to present to the Seventh Circuit, the perspective of Iowa workers. Moreover, the Iowa State B.C.T.C. is one of the state councils part of the North America's Building Trades Unions ("NABTU") consisting of more than three (3) million skilled craft professionals in the United States and Canada, which further exhibits the association's understanding of the labor community and its developing issues. *See About Us*, NORTH AMERICA'S BUILDING TRADES UNIONS, https://nabtu.org/about-nabtu/ (last visited Dec. 6, 2021). Finally, as the statistics presented in the previous subsection demonstrate, Iowa workers and their unions can best attest to how the misclassification of the work completed by migrant workers impacts wages and union stability.

The Iowa State B.C.T.C. along with its affiliated local unions, tirelessly advocate for the rights of Iowa workers, which in part involves urging employers to pay proper wages. On average, union construction laborers in Iowa are paid $24.91

per hour.[2] By contrast, the H-2A workers completing construction work are paid, on average, $15.13 per hour.[3] In addition to the nearly ten dollar differential per hour, the misapplication of the agricultural exemption also allows contractors to avoid overtime payments. This makes it impossible for union workers to compete for positions in such a job market. If a union attempts to compete for jobs constructing livestock enclosures, the union is forced to lower its wage demands. This allows for the perpetual depression of wages for workers–union, non-union, or migrant–within the field.

Furthermore, in an application for H-2A workers, the employer must show that the employment of the migrant workers "will not adversely impact the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1188(a)(1). The avoidance of overtime coupled with the lower than average wages paid to H-2A workers, clearly illustrates that Signet and other contractors are violating this basic requirement to be eligible to bring in migrant workers. Thus, while the work performed by H-2A workers may be needed to meet the demand for livestock enclosure construction in Iowa, the demand cannot excuse an employer's failure to pay proper wages and devastate the wages of Iowa workers.

---

[2] This average was calculated from the LiUNA! Local 177 construction laborer's wage scale for 2020-2021.
[3] This average was calculated from the data analyzed by Legal Action of Wisconsin and collected from the USDOL's number of reported H-2A construction-related jobs awarded in Iowa thus far for 2020-2021.

Moreover, the stability of Iowa's unions are dependent on its ability to have contractors willing to hire union workers. When construction projects are available, contractors will submit bids for the project to be completed by them, and in the bidding process the contractor provides an estimated cost for their completion. If the contractor is using union workers, rather than H-2A workers offering a much lower wage rate and failing to pay overtime, then that union-supporting contractor will likely lose out on the project opportunity to the competitor offering a lower price. The result is many contractors seek cheaper, non-union labor in order to compete for project bids, threatening the strength of local unions. *See* Stephen Franklin, et al., *This Visa Loophole That Big Ag Construction Firms Love to Exploit*, IN THESE TIMES (Apr. 30, 2018) https://inthesetimes.com/article/farming-visas-immigration-jobs-h2b-trump (explaining that this phenomenon of employer's using H-2A visas as a loophole to pay lower wages and avoid overtime payments is occurring across the country).

Finally, in this case, Signet utilized the H-2A visa loophole to hire migrant workers and complete construction-related jobs in Iowa. This has allowed, and continues to allow, Signet to pay lower wages, forego benefits, and escape overtime payment requirements for its migrant workers. When such a cycle is deemed legally permissible in the eyes of the court, it also allows our Iowa workers to be drastically underpaid, and leads to our workers, unions, and local economies suffering.

11

**II.** **<u>Conclusion</u>**

The Iowa State B.C.T.C. has a unique perspective given its extensive connections and deep understanding of the labor community within Iowa. The Iowa State B.C.T.C. continues to watch Iowa experience a historic boom in the number of H-2A workers being brought into the state for construction work. Recent failures by the USDOL to abide by its guidelines to deny H-2A visa applications containing nonagricultural work has fueled these rising numbers.

Now, as H-2A workers and union workers attempt to meet the rising demand for livestock enclosure construction within Iowa, it is essential that all workers' rights to proper wages are protected and not undermined by employers misusing the agricultural exemption to underpay construction laborers. As outlined above, to continue to permit employers to do so, will only lead to a further depression of wages for Iowa workers and a destabilization of Iowa's unions seeking to protect those rights.

For those reasons, the Iowa State B.C.T.C. respectfully requests that the Seventh Circuit find in favor of Plaintiff-Appellant.

Dated: December 7, 2021                    Respectfully submitted,

                                           **BLAKE & UHLIG, P.A**


                                           s/ Michael E. Amash
                                           Michael E. Amash
                                           mea@blake-uhlig.com
                                           Cayla M. Rodney
                                           cmr@blake-uhlig.com
                                           475 New Brotherhood Building
                                           753 State Avenue
                                           Kansas City, Kansas 66101
                                           Telephone:  (913) 321-8884
                                           Facsimile:  (913) 321-2396

                                           **Attorney for Amici Curiae
                                           Iowa State Building and
                                           Construction Trades Council**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Cir. R. 29 because it contains 2,346 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

The brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Cir. R. 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

Dated: December 7, 2021

s/ Michael E. Amash
Michael E. Amash

**Attorney for Amici Curiae
Iowa State Building and
Construction Trades Council**

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 7th day of December, 2021, the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF System. Further, the undersigned certifies that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Pursuant to ECF procedure (i)(2) and Circuit Rule 31(b), undersigned certifies that the Court will be provided with fifteen (15) copies of the Brief of Amicus Curiae Iowa State Building and Construction Trades Council in Support of Plaintiff-Appellant, transmitted to the court via UPS overnight delivery, delivery fee prepaid, within seven (7) days, upon the Court's acceptance of the electronic brief.

Dated: December 7, 2021                    s/ Michael E. Amash
                                           Michael E. Amash

                                           **Attorney for Amici Curiae
                                           Iowa State Building and
                                           Construction Trades Council**